The first case on our call this morning is Agenda Number 14, Case Number 106976, Maria Kouzoukas v. The Retirement Board of the Police Annuity and Benefit Fund of the City of Chicago. Counsel may approach. Morning. David Kugler, KUGLER, for the Retirement Board of the Policemen's Annuity and Benefit Fund.  If the court please, I'm going to address, I believe, two issues today. I'm well aware that the court has the briefs, has read the briefs, and is cognizant of the facts of the case. I think the two issues that I have in mind are, the first issue is whether or not Maria Kouzoukas met her burden of proof in establishing before the board that she was a retirement disabled within the meaning of disability as defined in the pension code. And the second issue is whether or not, by virtue of the Fenton case in 1990, the police code is subject to Section 2 of the Interest Act and therefore required, if the court so awards, excuse me, to pay pre-judgment interest. With regard to the first issue, a police officer, after being on the medical leave at the Chicago Police Department for a period of 365 days, exhausts her medical leave. There is no examination made by the police department. There is no finding of disability. The police officer, after the exhaustion of the medical leave, is returned to the pension board and the pension board, by virtue of the Pension Act, has the original and exclusive jurisdiction to hear the officer's case and determine if she is disabled. In this case, without going into any detail, the board ended up by finding that Maria Kouzoukas was not a credible witness, that the doctor who testified with his vacillating testimony as to the cause of her disability, and the fact that all of the independent medical examinations and testing done were unable to show any objective findings, and in the board's view, they found that Maria Kouzoukas was not disabled. What standard do we use to judge that proof? I would say that it is a manifest weight, but at the very worst, I guess, would be a mixed question of law or fact. Clearly erroneous. Which is the more stringent burden of proof? I would say the manifest weight. Mr. Kugler? Yes. Is there a protocol in place which would coordinate the findings of the doctor, the Chicago Police Department, and the board? There is no protocol, because the police department basically, after the exhaustion of 365 days, just turns the officer loose and says, you've exhausted your time, present yourself to the pension board, and they will determine whether or not you're entitled to a benefit. But she would go to the pension board first? Yes. And she would go to the pension board first? Yes. And she would go to the pension board first? Yes. And then she would go to the pension board first? Yes. The officer under Butita has a right to seek a return to work which the police department cannot refuse, and if the police department at that time determines that the person, they won't return her to work, is it the same injury which brought her to the board? And therefore, we may have to consider whether to grant her a duty disability benefit, because they won't return her to work, or do they find that she's recovered from, let's say, the hand injury that she claimed was disabling, and now she has problems with her liver, or she has other problems, and the board at that time may say, well, she's entitled to an ordinary disability benefit, because she is unable to return to work. But Butita is not on court, is it? In that case, I thought the injury that caused him to go on disability was not the one that refused, that caused his not being able to return. It was a liver disease. In the Butita case, the police department ended up not taking him back because of a different problem, that's right, and that's why the board ended up awarding him an ordinary disability benefit. Was there any attempt to offer any kind of less strenuous duty to the plaintiff? To Kazukas? Yes. Well, Kazukas never sought the return to work. That's half of the problem here. Kazukas just took What happens when the one year is up? Is some kind of notice given to her on the steps that she then must take? Yes. Well, the police department, after you exhaust 365 days on the medical rolls, the officer is advised by the police department that she's no longer going to be in receipt of salary, and that she has to, her claim is then, has to be presented to the pension board. Was that done here? Yes, it's done in all cases. That's how all cases reach the pension board. That's a record? I'm sorry? That is a record? I really don't know the answer to that except to say that that is the protocol in all cases. You cannot come to the board prior to exhausting your medical leave time with the Chicago Police Department. I would assume that's one of the documents in the record. That notice was given to her, what she must then do to seek some lighter type duty. That's my question. The notice was given to her to seek lighter duty? Yes. No, I don't think there was a notice given to her. What the board did was denied her claim for a duty disability benefit. Did the board do, has the record revealed that the board did anything to find a light duty spot for her? I don't believe, no, the record does not reveal that because that's not the function of the board. It may be perfectly justified. I'm just establishing as a matter of fact that the board did nothing to help her obtain a light duty position. No. That is correct? That's correct. Mr. Kugler, if an officer is found not disabled, does this substitute for a doctor's authorization to return to work? Did she need that? No, because if we feel that she can, if our medical establishes and she has not proved that she's disabled, she should return to work. We cannot pay someone a disability benefit if we don't find them disabled. So she would need an authorization from a doctor to return? The police department seems to have this thing out there in the air that unless you walk in with a doctor's note, they won't let you in. They won't examine you, which is kind of contrary to what Butita said, because they can't refuse you the opportunity of returning to work. So what would happen here is if the officer went back or tried to go back to work, because it's not the function of the police board, of the pension board, to find a job for her or assign her to a job, that's all the police departments. But if she would go back to the police department... But they can't argue, as you have, that she is fit for a light duty position. I'm sorry, what? You have proceeded in this case by arguing that she's fit for a light duty position. Yes, she is. But to backtrack a little bit, but there is nothing that shows that you identified any position that was... No, and that I do not believe is our function. If we find that she's, the act, disability, I think this is the key, in my view, to the whole situation. The disability provision in the act says the inability to perform any, any kind of activity, any assigned duty within the police department. It does not say that disability is required to find that the officer cannot return to the same position or the light position. It's that she's disabled from performing any assigned duty. The word any would mean any job within the police department. Does that argument mean that if she had herself tried to go back to work and identified a position that wasn't offered to her, wasn't given to her, she then would be in the same position she is if she did nothing? If she attempted to go back to work, I think it's the vision of the board, it's manifested if she attempted to go back to work and she was found not disabled because of the complaint of, or she was found to be disabled, I'm sorry, by the police department and they refused to return her to any job whatsoever, the matter would then be back before the board to determine what benefit she should have, be it duty because it's the same injury she claims disabled her in the first place, or ordinary because it's a different reason that she cannot return to work. What does the record show that she actually did? She did nothing. She did nothing. And it's your position, Mr. Kugler, that the board's denial of disability did not have to address any type of return to light duty work? Not to make that decision, no. This would come, this is not, there's nothing in the act which says the board cannot act until it finds out from the police department what they might do in the future with the officer. Now that position would be in conflict with the Toronto case, right? It would be in conflict with the Toronto case. I believe the Toronto case started as bad procedure, if I might use it quote unquote, because the Toronto case placed, took the burden of proof, the burden of proof for the officer to show that she is disabled from performing any function and placed it on the board to say now we can't find her disabled unless you find that the police department doesn't have a job, number one. And if they do have a job, like in this case, from the medical section, Officer Shane will testify, there are positions in the police department that could accommodate her. So the Kazookas case went one step further, and I believe, I hope I'm correct, that both decisions in Toronto and Kazookas were written by the same judge in the appellate court. But at any rate, it went one step further and it said not only do you have to say there's a job for her, but they have to offer her the job. Well, that's a good point, but what are the practical ramifications of the fact that the burden would be on the policeman here and not on the board, and you're saying as far as the light duty work, you don't have to show that she's available for light duty work. What happens in the practical world? Does the department then put her right into a light duty job? In the practical world, I would say I've seen a lot of officers return to work in functions other than they had when they first became before the pension board for benefits. I do not know, in all honesty, the functioning of the medical section of the Chicago Police Department, but it would seem to me that the legislature who creates the pension board gave to it exclusive jurisdiction and it did not say to the pension board, you cannot act unless you prove that the officer is disabled from performing any service. If we rule in favor of the city, what would prevent the plaintiff from starting the process now, coming in with a doctor's statement to the effect that she can't perform light duty? Is she barred from doing that as a timeframe? No. No. I would like to address, unless there's some further questions on this, the interest section, if that's... The prejudgment interest question is an interesting question, and of course, if this board sees fit to overrule the Kazuka's case, then of course, on the Kazuka's case, the prejudgment interest might be a moot issue. But it is an issue that has to be addressed because there's a conflict, I believe, between the 5th District of Fenton and the 1st District, which is elected to follow Fenton, and the 3rd District, which in the Bassett case, which basically says that the police code is not another or other instrument of writing, and therefore, subject to Section 2 of the Interest Act. Now, I want to attack, and I want to direct my attention to the Fenton case, because I think that is the case on which all of this foundation for later decisions seems to have been built. In the Fenton case, we're dealing with Section 2, which in pertinent part to the Interest Act provides creditors shall be allowed to receive interest for all monies after they become due on any bond, bill, promissory note, or other instrument of writing. The Fenton court went on to say that the pension code is an instrument of writing. Well, to that I might say, I'm not fully aware, other than an oral agreement, I guess just about everything is an instrument of writing. So if that was the byword of this whole case, and that the case was to be so broadly construed, they would not have needed the legislature the words bond, bill, or promissory note. They could have just said that creditors shall be allowed to receive interest for all monies after they become due on any instrument of writing. Mr. Kugler, isn't it true that the disability benefits under the pension code are considered contractual? Well, just calling something a contract doesn't make it a contract for all purposes. What the pension code is, it's been found to give officers a vested right in seeking a benefit. I know my time is pumping here, I think, so I want to go quickly if I can. The Fenton court then went on to say that, to try and find solace in the fact of their example, they said building, construction contracts, insurance policies, real estate listing contracts, leases are all writings, and they are no more like bonds, bills, or promissory notes than is a pension agreement, and therefore it's all covered. Well, they are different, because first of all, bonds, bills, and notes are agreements negotiated on a one-on-one basis between the parties as to the terms and conditions. Bonds, bills, and notes have dates in them when they are due, they have certain promises of performances, they have certain due dates, and they are different than the pension code. They are all commercial transactions, if you look at them. The pension code is not a commercial transaction. Are there consequences to any payment that's not made by the board? Delayed by the board? The pension act, and I would like to address that quickly. The pension act does have certain interest provisions in it, very limited interest in it. It does not provide in the 30, 40, 50 years of its existence, any agreement between the city of Chicago who makes this agreement and the police officer's representatives who forge an agreement, bring it to Springfield, the legislature enacts the provisions, and puts them in the pension code. The pension board, the trustees, do not pass legislation. The pension board, as I view it, is nothing more than if I do, Sherry. It's a conduit, it takes the money that the city puts in, it takes the money that the police officer puts in, and it distributes it in a manner in which the pension code tells it to distribute it. It does not make money, it is not a party to the agreement, it is not even a third party beneficiary because it does not receive anything, any part of any profit. All of the monies that come in are for the benefit of the people who are there. And so when there are consequences, I would say that if this, the board should not be bound by the interest act, but what should probably be more logical to me is that if the court, if a court were to find that the decision of the pension board was vexatious, was an abuse of discretion, was so arbitrary and capricious that it had no foundation whatsoever on a case-by-case basis, then they can exact possibly an interest payment on the money. Counsel, your time has been up for a little bit. I guess I was going along. What was the length of service of this police officer before the disability? I don't know from the top of my head, but I do know it's in the record. I think she came on in 95 and left in 2004. That sounds right, but the dates, the exact dates would be in the record, Your Honor. Thank you. What is the standard of review? Per Maria Kazuka's brief, may it please the court, Paul Geiger for Maria Kazuka's, we would argue that it is the clearly erroneous standard. However, the case was decided on a manifest weight standard, and I do believe under either standard our position is entitled to prevail. Given that, I would like... Would the standard of review be the same on this issue with regard to the interest act? No. That would be a manifest weight whether that's contrary to law, Your Honor. It wouldn't be de novo? It would be de novo for this court, absolutely. I'll start on the interest since that's what my opponent finished with. I'll kind of shift things around here. The interest issue comes before this court as I read it because of what happened in 2005. The Fenton case was just the beginning. Fenton has a progeny in Illinois, and it's Fenton, Barber, Martino, and then Barry versus the Fireman's Fund in 2005. But what also happened in 2005, and I believe one of the reasons we're here today, is the Bassett case. And the Bassett case came to us, I believe, within several weeks of the denial by this court of the petition for leave to appeal in the Barry matter. This court had denied a petition for leave, and then several weeks around that denial is where Bassett shows up out of the third district, and they reject the payment of prejudgment interest in a case such as this. So it's really the conflict between the Fenton line, ending in Barry, and Bassett out of the third district. And nobody, unfortunately, no litigant in the Bassett case filed a PLA. So my client and her case wind up here on this interest issue. And it's a good thing, because it needs to be resolved. And I will point out, the reason Bassett needs to be reversed by this court, is they rely on the rule of adjustum generis, if my Latin is proper there. And what that means is of like kind. And when they looked at the interest act at 205 section 2, the words bond, bill, promissory note, are followed by or other instrument in writing. So they apply the principle of adjustum generis to that phrase. And they say that a pension agreement is not an instrument of like kind. But I suggest it most certainly is, because what similarities are there, in fact, between a bond, a security, a bill, an invoice? There's no similarities there. Or a promissory note. The similarities are minimal, except that they are all three evidence of indebtedness. And that, when you apply adjustum generis, evidence of, you know, an indebtedness, so is a pension agreement, the same thing. And if you look at... be involved in a pension board having to maybe make a decision with the worry of being overturned on administrative review and factoring into that decision some type of business analysis that would go well, what would the prejudgment interest cost? Should that be any part of their decision at all? In a case such as this, no. And here's why. I actually spent some time last night when I was studying up doing a little math on this case and computing the prejudgment interest versus the Chicago Police Pension Fund. The prejudgment interest in this case, and this will be a stunning figure, equals approximately, per their last estimate of what the worth of that fund is, five one hundred thousandths of one percent. To say that this amount is de minimis is kind of an insult to de minimis. This is nothing in the big picture. This is something an actuary, you know, they don't go five... Well, I have to stop you on the in this case. Okay. Because really anything that this court does rarely does it affect this case. In this case and a whole lot of other cases. True. I think the question still stands. Sure. And, Your Honor, and the answer, while it certainly, you know, will be moving some decimal points to the left as you go to different funds, I think the answer remains the same. These are small amounts of money, these prejudgment interest awards. Also, Justice Fassard in the Berry, her Berry opinion was a long and, you know, very well reasoned opinion as I see it. She doesn't necessarily talk about public policy, but she does in a way that she's talking about the fact that there is a period of time where the board has the officer's money as well as the city's money that it's entitled, obligated to put in at their disposal prior to resolution. Now, ostensibly, that money that they're holding is making money. So the application of the prejudgment interest to a plaintiff such as Maria Kazoukas only makes sense as an equitable outcome to the problem. What did the legislature have in mind when they already put in the statute information about prejudgment interest? Why would anybody have to go any further than stay within that statute? Well, because the courts have. They have to go further because there's only three categories of vehicles of indebtedness in the statute itself, and the courts have gone further, things such as contracts and insurance policies and things of that nature. Section 2 of the Interest Act has been expanded by the appellate courts of Illinois into other documentary vehicles of indebtedness. But that's the interest act. What about the pension code? They've already addressed it. What did they have in mind there? Well, they didn't provide interest. Did they think that anyone was going to need to go outside the act itself? That I don't know, Justice Burke. In terms of the prejudgment interest question, I don't know if they felt that there was any need to go outside the act. I do know that this issue has been roiling around since 1990 when Fenton was decided, and I don't believe there's been any legislative action to cure what's happened. If I may, I'd like to switch to now the beginning of my opponent's argument regarding my client, Maria Kazoukas. And you are quite correct, Justice Burke, she was the police officer for nine years prior to the injury. I wanted to answer your two questions. The two questions were, does the officer still need a note to return to work after denial? The answer to that unequivocally is yes, and that answer is also provided not just by me here, but by Lieutenant Thomas Shadle, who is the commanding officer of the medical services section for the police department in that record. He says I cannot return her to work, and he will not. So the answer is unequivocal there. Then your other question. Did she have a note? No. Dr. Yipor and my client, Dr. Wesley Yipor is a neurosurgeon from Northwestern Hospital. He testified in this case. Dr. Yipor and my client have been crucified for being allegedly non-credible, and there are a number of shots taken at the two of them. Dr. Yipor is actually a world-famous neurosurgeon and really on the cutting edge of medicine, and I think that's unfair and unfortunate. But the pension board wants you to think this is a credibility case. It's nothing of the sort. It's a case about legalities and burdens. What the pension board wants to avoid is what its doctor did at the hearing for Maria Kouzoukis. Its doctor is Dr. Dave Demarest. He testified, and what did he say? He said I don't believe it would be prudent to return her to full active duty. The pension code does not discuss light-duty jobs. It doesn't. The pension code says if you cannot perform the functions of a fully active police officer, you're disabled within the meaning of the act. That determination can shift with an offer of employment, and that's what Toronto is all about. So there is no question at all that in terms of burden, the burden was met at the pension board by Maria Kouzoukis when Dr. Yipor says I will not release her to any work, and Dr. Demarest says it's not prudent to have her work full duty. Now, I don't think this court needs reminding. This officer is on Vicodin. This officer is on Valium. This officer is on lidocaine patches. Dr. Yipor says that it would be illegal for someone to operate a car on these medications, narcotics, but yet the pension board feels it's perfectly appropriate to have them carry a gun. Justice Thomas asked what goes on in the real world with our officers, and I have a little bit of an edge on the board here because I also work for the officers' union, and I can tell you what goes on in the real world. In the real world, the Chicago Police Department does not make accommodations. In the real world, if you cannot shoot a gun and qualify and walk unassisted without a cane or any other device, you will not work as a police officer. End of story. And that is how the department operates. This department will not put my client back to work. Justice Burke asked what is the officer's responsibility. The officer's responsibility, she remains on leave of absence. She has to comply with the general orders and directives of the department. However, as far as returning to work, the department can at any time force her into a functional capacity evaluation or any other medical evaluation at once. It hasn't done so. And just, you know, in the same vein, disability, once benefits are given, is reviewed every year. A doctor has to provide a certificate saying the officer is still disabled. Would it change, Mr. Geiger, if the board does address light-duty work? The board never addresses light-duty work, and I'm glad you asked that because I wanted to talk about it. I'm the person that brings up the Butita case, and I know Justice Freeman had some issues with it. Butita, I know it's not binding on this court. The facts of it, the legal theory of it, really are rather irrelevant to this case. The reason I cited Butita is that the Federal Court of Appeals there was construing the statute on proof of disability within the pension code. And what the Seventh Circuit said was that the pension board and the Chicago Police Department both have interests in, you know, one, in preserving their money, the pension code, and two, in keeping, you know, officers safely on the street or off the street. And the federal court urged them or told them that they should both be involved together in the process. And what you saw with my opponent's argument is the continuing refusal of the pension board and the Chicago Police Department to even communicate with each other. They have no communication whatsoever. I can tell you that is fact. Now, back to this case. The Toronto case out of the First District, which obviously controlled this case, does not merit any reversal. It has been good law for quite some time, and it remains good law. It wasn't until we arrived at the Supreme Court here that now we see the argument that this is bad law and needs to be overturned. And what Toronto really gave us is it gave us a nice definition of when the burden is met, and that's when the officer establishes at the board that she can't do the active duties of a police officer. We got there. And it also says that that can change if there is an offer of employment. I would also take issue with the argument that was presented earlier that there was abundant evidence of positions. That's not true. We can all read the record. It's not in there. I can't point you to something because it doesn't exist. There are sedentary jobs within the department that do exist, but there is no discussion of one confined to this officer's particular maladies and or disabilities. One of the reasons for that was Dr. Ypore said, well, she can't drive a car on these drugs. I don't want her carrying a gun. Simple as that. And the pension board just refuses to honor that and instead says it's a case of credibility between my client and the board. That said, if there's no further question, I would conclude it. Thank you. Thank you very much. I really have nothing further to add except to make one comment, and I think Justice Thomas was correct. While the interest problem, prejudgment interest problem in the matter of kazookas may be slight, may be large, I don't know.  and I didn't spend last night trying to calculate it like my opponent did. But at any rate, it is and does have a chilling effect throughout a pension system. In two recent cases in the appellate court, Cunningham and Hooker, which have just been recently decided against the fire fund, they were following Fenton's logic and case in order to pay interest, prejudgment interest. And I understand from talking to those counsel that by the number of firemen involved, that is going to be in the millions of dollars. So prejudgment interest, depending upon the given case, can have that chilling effect. My last comment would be this. What is the Pension Act really there for? The Pension Act is there to provide to officers a benefit if they are entitled to the benefit. They are not entitled to less of a benefit than they're entitled to, nor should they be entitled to a greater benefit they are entitled to. Again, going back to what Justice Thomas had to say, if the board has to sit there and figure out cases as what the economic damage may be to the fund, because you've got to remember that the fund is not there just for the officers who are in service today, but the fund is there for the officers who will be in service tomorrow. And this fund, unfortunately, and I think I'm accurate in saying, like many funds throughout the state, many funds throughout the country, are not overfunded. They are more likely to be underfunded. And for that reason, benefits should be awarded when they are due, in the amount that they're due, and not more than they're due, and not less than they're due. Thank you. On the manifest way question, what about what Mr. Geiger said regarding the board's doctor, and the board's doctor's opinion, regardless of how credible the officer and that doctor was? The board's doctor's opinion said that she could not function as a full duty. He did not believe that she could function as a full duty police officer. I cannot change that. That's in the record, obviously. The fact is that that is not sufficient to establish disability. I didn't define the word disability. The legislature did. And the legislature elected to define it as the inability, physical or mental incapacity, to perform any assigned duty. It does not have to be, under the legislature's definition, a full duty, street fighting, combative police officer. Well, counsel, if your doctor reached that conclusion, you said you can't change that conclusion, that she's not able to return to work. My question is. Full duty. Right. Is there any medical evidence in this record that she's capable of returning to work? Yes. There's nothing wrong with her. There isn't one. My question is, is there medical evidence? And then what medical evidence is there? There's every test that was performed, including Dr. Spencer, who I believe made the statement something, that her pain may be aggravating, but it's not incapacitating. Okay. My question is this, did that doctor, any doctor, testify that she was fit to return to employment? I thought our doctor indicated that she could return, not to street duty, but that she could return to employment. Thank you. Aggravating, but not incapacitating. Does that mean that there was no need for her to continue to take the medication that she's taking that would influence her ability to drive or shoot? Well, I think the record will reflect that her ability to function depended on what she was doing. I mean, she was able to drive her car. So her taking the medication is unnecessary? Well, taking a medication, certain medications, I would assume, could affect your reflexes on your ability to perform. There's no testimony that she need not continue to take the medication that she was prescribed. I don't know if there was that. There was testimony that the Dr. Yapur never prescribed any of the medication she was taking. And that was her physician? Dr. Yapur. Thank you. Thank you, Counsel. Case number 106976 will be taken under advisement.